UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81102-CIV-COHN/SELTZER

ADOBE SYSTEMS INCORPORATED,

    Plaintiff,

v.

BEA'S HIVE LLC; FULFILLMENT
SOLUTION  SERVICES, LLC; NEW EPIC
MEDIA, LLC; SELACORP, LTD.;
SUPREME GROWERS LLC; VEGALAB,
LLC; STEVEN BLACKBURN; DAVID
SELAKOVIC; STACY BLACKBURN;
TOP SOFT DEALS LLC, RICHARD
NEUMAYER, and DOES 4-19, inclusive,

    Defendants.

_____/

## ORDER GRANTING MOTION FOR CONTEMPT AND SANCTIONS

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Contempt and Sanctions Against Defendant Steven Blackburn [DE 70] ("Motion").  The Court earlier set a hearing on the Motion for January 29, 2015.  See DE 83 at 1.  But after further reviewing the Motion and all related filings, the Court will cancel the hearing and grant the Motion as detailed herein.

**I.   Background**

    **A.   Asset-Freeze Orders**

In general, this case involves claims by Plaintiff Adobe Systems Incorporated that Defendants—including Steven Blackburn—willfully infringed upon trademarks and copyrights owned by Plaintiff, and sold counterfeit and unauthorized software bearing those trademarks and copyrighted works.  See DE 1 (Compl.); DE 82 (1st Am. Compl.). On August 25, 2014, the Court granted Plaintiff's Sealed Ex Parte Application for

Temporary Restraining Order [DE 5].  See DE 13 at 3 ("TRO Order").  The TRO Order included an Order Restraining Transfer of Assets ("Restraint Order"), which provided that "Defendants, their officers, agents, servants, employees, attorneys, and any persons, firms, or corporations acting in concert or in participation with them, or having knowledge of this Order by personal service or otherwise, are . . . temporarily restrained from transferring any assets related to Defendants' counterfeiting operations."  Id.; see id. at 5, ¶ 12.

On September 4, 2014, the Court also granted Plaintiff's Sealed Request for Writ of Attachment Regarding Defendants' Financial Accounts [DE 18].  See DE 25 ("Attachment Order") at 1-2.  Plaintiff's filing identified several bank and credit accounts used in Defendants' business operations.  Construing Plaintiff's request as seeking to temporarily freeze Defendants' financial accounts, the Court found that a temporary freeze was "necessary to preserve funds that may be used to satisfy any monetary relief awarded in this case."  DE 25 at 2.  Based on this conclusion, the Court entered the following Order with respect to fifteen specific accounts and any other accounts held by the same financial companies in the name of any Defendant:

> Any financial institution, business entity, or other person served with a copy of this Order, or otherwise having actual or constructive knowledge of this Order, that holds, controls, or maintains custody of any of the following accounts, shall hold, preserve, and retain within such person's control, and prohibit any withdrawal, transfer, disposal, or other use of any and all assets, monies, and lines of credit in such accounts, except as directed by further Order of the Court[.]

Id. at 2-4, ¶ 2.

Further, on September 18, 2014, the Court granted Plaintiff's Motion for Preliminary Injunction [DE 5].  See DE 55 ("PI Order").  In so doing, the Court found that

"Defendants or other persons acting in concert with Defendants may transfer assets tied to the piracy operation if not restrained by the Court, thus frustrating Adobe's available remedy of disgorgement of profits."  DE 55 at 19, ¶ 19 (citations omitted). The Court thus ordered that "Defendants, their officers, agents, servants, employees, attorneys, and any persons, firms, or corporations acting in concert or in participation with them are also restrained from transferring any assets related to Defendants' infringing business operations, pursuant to the Court's Orders barring such transfers." Id. at 24, ¶ 2.

### B.  Defendant Steven Blackburn's Withdrawals

Plaintiff's Motion and supporting evidence show that, from September 3, 2014, to September 9, 2014, several withdrawals, payments, and transfers were made from two bank accounts naming Defendant Steven Blackburn ("Blackburn") as an owner. See DE 70 at 5 (summary tables).  The total funds withdrawn equaled $83,504.11 and included a cashier's check in the amount of $53,000.00.  See id.  During the same period, both accounts were closed.  See id.

Plaintiff contends that these transactions violated the asset-freeze requirements of the Restraint Order, Attachment Order, and PI Order.  Too, Plaintiff asserts that Blackburn has refused to return the withdrawn funds or to disclose the status and location of the $53,000.00 cashier's check.  Plaintiff therefore requests that the Court "find Defendant in contempt with the Court's Orders, and . . . require Defendant to deposit the illegally withdrawn funds with the Court, imposing an additional fine for Defendant's egregious behavior, and awarding fees and costs to Adobe associated with bringing this Motion, along with any other remedies or penalties that the Court finds appropriate."  DE 70 at 2.

Blackburn does not dispute that the challenged withdrawals were made, that he was at least present when most of the funds were withdrawn, and that he was aware of the first two asset-freeze Orders at the time of the withdrawals. Instead, Blackburn essentially argues that (1) he held the two accounts jointly with his wife Stacy, who was not then a party to this action; (2) several of the transactions in one account were online payments that Ms. Blackburn had previously scheduled; and (3) two transactions were made in an account containing assets unrelated to Defendants' alleged illegal conduct.

## II.   Discussion

Courts possess "inherent power to enforce compliance with their lawful orders through civil contempt." Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991) (citing Shillitani v. United States, 384 U.S. 364, 370 (1966)). A party seeking civil contempt must show by clear and convincing evidence that the alleged contemnor violated a court order. See United States v. Roberts, 858 F.2d 698, 700 (11th Cir. 1988) (per curiam). Once the movant makes this prima facie showing, "the burden shifts to the alleged contemnor to produce detailed evidence specifically explaining why he cannot comply" with the order. Id. at 701 (citing United States v. Rylander, 460 U.S. 752, 755 (1983)). "This burden of production is not satisfied by a mere assertion of inability." Id. (internal quotation marks omitted). Rather, "a party subject to a court's order demonstrates inability to comply only by showing that he has made in good faith all reasonable efforts to comply." Id. (internal quotation marks omitted).

If civil contempt is proven, the court may impose sanctions "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. United Mine Workers of Am., 330 U.S. 258,

4

303-04 (1947); see Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc., 950 F.2d 1525, 1530 (11th Cir. 1992) (per curiam).  Typical coercive sanctions include fining or incarcerating a contemnor until he obeys the order.  See Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828-29 (1994); Wellington Precious Metals, 950 F.2d at 1530-31.  Coercive sanctions, however, may be no greater than necessary to ensure compliance.  See Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1558 (11th Cir. 1996).

Based on the evidence presented, Plaintiff has shown by clear and convincing evidence that Blackburn violated the Court's Orders restraining the assets in Defendants' bank accounts.  During the time of Blackburn's transactions, the Restraint Order and Attachment Order were in effect, and together they made plain that no one who knew of the Orders was to transfer funds from any of Defendants' bank accounts.  Yet Blackburn, with full understanding of these Orders, proceeded to withdraw more than $80,000.00 from accounts listing him as an owner.  And as Plaintiff correctly notes, the Orders provided "no exclusion for accounts or assets held jointly with another." DE 81 at 3.  The Court is likewise unpersuaded by Blackburn's argument that one account contained no funds related to Defendants' claimed unlawful conduct.  The Attachment Order includes no such requirement, and, in any event, the record shows that Defendants often commingled their bank accounts.

Nor has Blackburn produced any evidence that he could not comply with the asset-freeze Orders—all he had to do was leave the accounts untouched.  More, according to Plaintiff, Blackburn has refused to return the withdrawn money or to help Plaintiff locate the $53,000.00 cashier's check.  The Court will therefore hold Defendant Steven Blackburn in civil contempt.

As a coercive sanction for his contempt, and since the relevant bank accounts are now closed, the Court will order Blackburn to pay into the Court registry the full amount of the unauthorized withdrawals—$83,504.11.  If Blackburn fails to obey this Order, the Court will fine him $500.00 per day until he complies.  Having previously heard evidence of Defendants' business operations, the Court concludes that the amount of this fine is appropriate to ensure Blackburn's compliance with the reimbursement Order.  Also, as a compensatory sanction for Blackburn's contempt, the Court will require him to pay the reasonable attorney's fees and costs that Plaintiff has incurred in litigating the present Motion.  See Rickard v. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir. 1984).

### III.    Conclusion

For the reasons discussed, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Contempt and Sanctions Against Defendant Steven Blackburn [DE 70] is **GRANTED**;

2. Defendant Steven Blackburn is **HELD IN CONTEMPT** of this Court.

3. By no later than **February 13, 2015,** Defendant Steven Blackburn shall pay into the Court registry the total sum of $83,504.11, to be held there until the Court orders otherwise;

4. If Defendant Steven Blackburn does not timely deposit these funds, he shall pay to the Court a **FINE** of $500.00 per day, starting on February 14, 2015, and continuing until he deposits the full $83,504.11 into the Court registry;

5. Defendant Steven Blackburn shall reimburse Plaintiff for the reasonable attorney's fees and costs it has expended in pursuing its Motion.

By **February 6, 2015,** Plaintiff shall file documents supporting the requested fees and costs;

6. If Defendant Steven Blackburn fails to comply with the contempt sanctions herein, the Court will then consider whether to impose further monetary and non-monetary sanctions against him, possibly including coercive imprisonment; and

7. The Motion Hearing scheduled for January 29, 2015, is **CANCELLED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 27th day of January, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF